UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| DONYELL DEWAYNE HOLLAND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No.: 1:21-CV-166-KAC-CHS |
| v. ) | |
| ) | |
| BRANDON BOOTH, OFFICER MOORE, ) | |
| JIM HAMMOND, SILVERDALE ) | |
| DETENTION CENTER WARDEN, ) | |
| ASSISTANT WARDEN, CHIEF ) | |
| GARRETT, CHIEF SHEPARD, ) | |
| CAPTAIN KNIGHT, LT. LOWERY, ) | |
| SECURITY OFFICER ELLIS, ) | |
| SECURITY OFFICER QUALLS, ) | |
| JEREMY POTEET, SECURITY ) | |
| OFFICER CARSON, KRISTIE FLOYD, ) | |
| C.O. ROWLAND, JASON CLARK, ) | |
| NURSE DRAPER, NURSE ROE, ) | |
| WENDY HARRIS, ALYCIA MILES, ) | |
| HAMILTON COUNTY TN STATE ) | |
| GOV., NURSE JOY, and NURSE ) | |
| CRIDER, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM & ORDER

Plaintiff Donyell Dewayne Holland, a prisoner housed at the Silverdale Detention Center, filed a pro se Amended Complaint under 42 U.S.C. § 1983 arising out of an assault that allegedly occurred during his incarceration and subsequent events [Doc. 32]. Because Plaintiff is incarcerated, the Prison Litigation Reform Act ("PLRA") requires the Court to screen his complaint to determine whether he has stated a justiciable claim. *See* 28 U.S.C. § 1915A. For the reasons set forth below, the Court dismisses the Amended Complaint in part and allows it to proceed in part.

I.  **SCREENING OF COMPLAINT**

   A.  **Screening Standards**

Under PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or "seek[] monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. §§ 1915(e)(2)(B); *see also Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard that the Supreme Court articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (citations omitted). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Formulaic and conclusory recitations of the elements of a claim do not state a plausible claim for relief. *Id.* at 681. Likewise, an allegation that does not raise a plaintiff's right to relief "above a speculative level" fails to state a claim upon which relief may be granted. *Twombly*, 550 U.S. at 570. However, the Supreme Court has instructed that courts should liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than "formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

   B.  **Plaintiff's Allegations**

Plaintiff, an inmate housed at the Silverdale Detention Center, asserts that during the evening hours of June 14, 2021, while he was handcuffed, Defendants Correctional Officers ("COs" or "CO" individually) Brandon Booth and Moore punched him, threw him against the

2

wall, and rammed his head into a steel door, rendering Plaintiff unconscious [Doc. 32 p. 3-4]. COs Booth and Moore then pushed Plaintiff face-first into an iron cage, where he hit the wall before falling to the floor bruised, bleeding, and in pain [*Id*. at 4]. Plaintiff was then pushed into cell G3-2 and fell onto the floor still handcuffed [*Id*.]. Plaintiff's wrists were bleeding from the tightness of the handcuffs [*Id*.]. Defendant CO Ellis put his knees on Plaintiff's back and neck while he uncuffed Plaintiff and tased him [*Id*.]. Then, using his foot, CO Ellis pushed Plaintiff over onto his back and pointed a "yellow gun" in his face [*Id*.].

While Plaintiff was still on the ground in cell G3-2, Defendants Nurses Draper and Joy entered the cell and told Plaintiff to "get up and to quit crying like a big baby" [*Id*. at 5]. Nurses Draper and Joy threatened to leave if Plaintiff did not "get up," and CO Ellis stated that they should leave because Plaintiff would "heal in due time" [*Id*.]. CO Ellis and Nurses Draper and Joy then allegedly left Plaintiff on the floor in the cell, where he remained "in the same spot for 3 days" [*Id*.]. During that time, Plaintiff defecated and urinated on himself, and he was not fed [*Id*.].

Three days after Plaintiff was thrown into the cell, Nurses Trina and Love found him on the floor of the cell and rendered medical attention to him [*Id*.]. Defendant CO Rowland threatened Nurse Trina "with fear tactics" because she documented Plaintiff's injuries [*Id*.]. CO Rowland verbally abused and threatened Plaintiff whenever he worked in Plaintiff's unit, and he spit in Plaintiff's food "every time he worked" [*Id*.]. CO Rowland continued threatening Plaintiff when Plaintiff was moved back to Unit G2 approximately one month later [*Id*.]. Plaintiff reported CO Rowland's behavior to Defendant Lt. Lowery and Plaintiff's criminal attorney [*Id*.]. Plaintiff maintains that he still suffers from a concussion, neck and back pain, and a jaw injury [*Id*. at 4]. He is on medication for the injuries he sustained during the June 14, 2021, incident [*Id*.].

3

On October 6, 2021, CO Ellis allegedly threatened Plaintiff, and CO Ellis, along with COs Moore and Booth, strip searched Plaintiff and forced him to walk "half naked" to a different cell [*Id*. at 5]. On November 17, 2021, COs Ellis and Moore cancelled Plaintiff's video visit for that day, threatened Plaintiff, and placed Plaintiff on lock down for questioning the nurse about his pain medication, which he had not received since August [*Id*.]. Plaintiff did, however, begin receiving the medication the following day [*Id*. at 5-6].

On November 19, 2021, CO Ellis allegedly came to Plaintiff's cell "making threats and negative comments" [*Id*. at 6]. On November 23, 2021, CO Moore took Plaintiff's personal property and threw it in the trash [*Id*.].

On four different occasions between June 2021 and December 2021, CO Booth put Plaintiff on lockdown without a disciplinary charge and/or a disciplinary hearing [*Id*.]. During these occasions, Plaintiff was allegedly not allowed recreation, commissary, access to the grievance or sick call procedure, access to the law library, or telephone privileges [*Id*.]. Additionally, he was denied mail through the postal service, as all of the mail sent to him was "returned to sender" [*Id*.].

Plaintiff's family and his criminal attorneys informed Defendants Chief Shepard and Sheriff Jim Hammond of the assault against Plaintiff on June 14, 2021, yet these officials have allowed the purportedly offending officers to remain on the Silverdale Detention Center's security team [*Id*. at 7]. Chief Sheppard and Sheriff Hammond have also been informed of Plaintiff's lockdowns and restrictions [*Id*.].

A counselor gave Defendant Grievance Officer Jason Clark Plaintiff's initial grievance about the June 14, 2021 assault against him, but CO Clark "failed to do the proper process that is required of the Grievance Board Procedure" [*Id*. at 8]. Further, CO Kristie Floyd, CO Jeremy

4

Poteet, and Counselor Alycia Miles intentionally "displayed ill treatment" of Plaintiff by documenting all of his grievances as "resolved" on any grievances forms while disregarding the grievances [*Id.*].

Defendant Counselor Wendy Harris intentionally withheld Plaintiff's certified six-month account status in this action [*Id.*].

On January 26, 2022, Plaintiff signed up for sick call around 9:00 a.m. complaining of neck and back pain, and by approximately 4:30 p.m., the right side of his body had "locked up" on him, causing stiffness and pain [*Id.* at 8-9]. Defendant Nurse Crider left Plaintiff "neglected on the ground" without checking Plaintiff's vital signs or obtaining a physician's attention for Plaintiff, and without giving him pain medication [*Id.* at 9]. Instead, Nurse Crider took off Plaintiff's shoes and socks, rubbed the bottom of his feet, and stated "you're not paralyzed" [*Id.*]. She allegedly told officers to "drag [Plaintiff] back in his cell" and left the unit [*Id.*]. Another inmate was ordered to put Plaintiff back in his cell, where he remained on the floor until the late-shift nurse came in and gave him his medications [*Id.*]. Plaintiff has still not seen a doctor concerning the pain in his back and neck, even though his right arm goes numb and tingles in pain whenever pressure is placed on that side [*Id.*].

Plaintiff asks the Court to order therapy for his neck, head, and back; order permanent pain medication; certify him as disabled and issue disability income; award him $15 million for permanent injury and mental damage; and require all of his court fees to be paid [*Id.* at 10].

### C. Analysis

"There are two elements to a . . . [Section] 1983 claim. First, a plaintiff must allege that a defendant acted under color of state law. Second, a plaintiff must allege that the defendant's conduct deprived the plaintiff of rights secured under federal law." *Handy-Clay v. City of*

*Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (citing *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010)).

### 1. Defendants Plaintiff Omitted from Amended Complaint

This Court previously ordered Plaintiff to file an amended complaint and expressly advised him that "this amended complaint will be the sole operative complaint that the Court considers, and therefore, it **must** be complete in and of itself and must not refer to any previously filed allegations or pleadings" [Doc. 28 p. 2 (emphasis in original)]. When Plaintiff filed his Amended Complaint, he omitted several previously-listed defendants from his Amended Complaint [*Compare* Docs. 2 and 18 *with* 32]. It is well settled that "[a]n amended complaint supersedes an earlier complaint for all purposes." *See In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 589 (6th Cir. 2013). Plaintiff's operative Amended Complaint contains no allegations against Defendants Silverdale Detention Center Warden, Assistant Warden, Chief Garrett, Captain Knight, Security Officer Qualls, Security Officer Carson, or Nurse Roe. Accordingly, the Court **DISMISSES** these omitted Defendants.

### 2. Supervisory and Entity Defendants Claims (Shepard, Hammond, Lowery, and "Hamilton County, TN State Gov.")

Plaintiff contends that Defendants Chief Shepard, Sheriff Jim Hammond, and Lt. Lowery were made aware of the alleged injustices Plaintiff suffered at the hands of other employees of the Hamilton County, Tennessee state government and that they are therefore liable under Section 1983. However, any liability as to these Defendants must be based on individual conduct of the defendant, not his or her supervisory status alone. *See Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021) (requiring "active involvement by the supervisor and causation" to establish a Section 1983 supervisory liability claim). Plaintiff has not alleged that Defendant Shepard, Hammond, or

6

Case 1:21-cv-00166-KAC-CHS   Document 37   Filed 04/20/22   Page 6 of 13   PageID #: 152

Lowery, through his or her own conduct, was actively involved in the violation of Plaintiff's protected rights. Therefore, the Court **DISMISSES** Defendants Shepard, Hammond, and Lowery.

Similarly, Hamilton County, Tennessee State Government cannot be held strictly liable for actions committed by an employee paid by the County. Rather, Plaintiff's claim may proceed only if the Court finds that Plaintiff has stated a plausible claim that an official policy or established custom of Hamilton County served as the moving force behind the constitutional violations alleged. *See, e.g., Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 708 (1978) (Powell, J., concurring) (explaining a municipality can only be held liable for harms that result from a constitutional violation when that underlying violation resulted from "implementation of [its] official policies or established customs"); *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) (holding Plaintiff must demonstrate that "the municipality was the 'moving force' behind the injury alleged"). Plaintiff has not alleged any custom or policy of Hamilton County that served as the moving force of his alleged constitutional injuries. Therefore, the Court **DISMISSES** Defendant "Hamilton County, TN State Gov."

### 3. Grievances Claims (Defendants Clark, Floyd, Poteet, and Miles)

Plaintiff claims that Defendants Clark, Floyd, Poteet, and Miles bear liability in this case for failure to properly handle or respond to his grievances. However, inmates do not have a constitutional right to a particular grievance procedure, and they therefore have no protected constitutional interest in having any such grievances satisfactorily resolved. *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)). Further, "[t]he 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight,* 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Therefore, the Court **DISMISSES** Defendants Clark, Floyd,

7

Poteet, and Miles.

### 4. Inmate Account Statement Claim (Defendant Harris)

Plaintiff contends that Defendant Harris intentionally withheld Plaintiff's certified inmate account status despite this Court's order requiring Plaintiff to produce the information. However, Plaintiff was able to obtain the information and pursue this legal action. Therefore, he has not demonstrated that he was prevented from pursing a legal claim or that he lost the ability to pursue some avenue of relief due to the alleged delay caused by Defendant's conduct. As such, his allegations fail to state a claim upon which relief may be granted. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996) (holding inmate claiming lack of access to courts must demonstrate the prison officials impeded non-frivolous civil rights or criminal action); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("An inmate who claims his access to the courts was denied fails to state a claim without any showing of prejudice to his litigation."). The Court therefore **DISMISSES** Defendant Harris.

### 5. Verbal Abuse/Harassment Claim (Defendants Ellis and Rowland)

Plaintiff next contends that Defendants CO Ellis and CO Rowland, have threatened and/or verbally harassed him. However, general verbal abuse and harassment do not constitute "punishment" under the Constitution or otherwise raise a constitutional issue. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). Therefore, these allegations fail to state a claim under Section 1983. And the Court **DISMISSES** Plaintiff's claims for verbal abuse, threatening comments, and/or harassment against Defendants CO Ellis and CO Rowland.

### 6. Food Contamination Claim (Defendant Rowland)

The only other factual allegation Plaintiff levies against Defendant CO Rowland is that he spit in Plaintiff's food "every time he worked" [Doc. 32 p. 5]. Plaintiff does not advise the Court how often Defendant Rowland worked, whether he observed Rowland spit in his food, whether he

8

believed Rowland spit in his food during multiple meals per shift, and/or whether Plaintiff was able to obtain food from alternate sources. Without more robust factual support, Plaintiff's allegations are insufficient to allow the Court to infer that Rowland's conduct posed an objectively serious risk to Plaintiff's health or safety under the Constitution. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (holding prisoner must show he faces a sufficiently serious risk to his health or safety, and that the defendant acted with deliberate indifference to the inmate's health or safety to state Eighth Amendment claim); *Davis v. Putnam*, No. 1:10-CV-01655, 2011 WL 1298117, at *2 (E.D. Cal. Mar. 31, 2011) ("Spitting in a person's food does not rise to the level of a serious harm in violation of the Eighth Amendment...."). Therefore, the Court **DISMISSES** this claim against Defendant Rowland as well.

### 7. Lockdown Claim

To sustain an action against Defendants based on his placement in lockdown (or administrative segregation), Plaintiff must show the existence of a protected liberty or property interest with which Defendants interfered. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake."). There is no liberty interest "in avoiding transfer to more adverse conditions of confinement." *Id.* (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). However, in certain circumstances, "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations," where the confinement "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 222-23 (citing *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995)).

9

"[A]dministrative segregations have repeatedly been held not to involve an 'atypical and significant' hardship implicating a protected liberty interest." *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997) (finding that an inmate "could not after *Sandin*, argue that placement in administrative segregation is an 'atypical and significant hardship'"); *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 (6th Cir. 1995) (finding that mere "placement in administrative segregation was not an atypical and significant hardship, as intended by *Sandin*"). Therefore, Plaintiff's placement on "lockdown" does not implicate a protected interest to which due process protections attach. Accordingly, Plaintiff has failed to state a claim upon which relief may be granted, and the Court **DISMISSES** this claim.

### 8. Disciplinary Procedures Claim

Relatedly, Plaintiff complains that he was placed on lockdown without a disciplinary hearing or written charges lodged against him. However, a prisoner facing disciplinary action does not have "the full panoply of rights due a defendant" in a criminal prosecution. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citation omitted). A failure to comply with prison regulations in disciplinary proceedings does not raise a constitutional issue, because mandatory language in prison regulations does not create a liberty interest protected by the Due Process Clause. *Rimmer-Bey*, 62 F.3d at 790-91. In this case, Plaintiff does not contend that any sentencing credits were revoked during the disciplinary process so as to invoke due process protections, but rather, merely that he was housed in restricted conditions without a hearing or written notice of the charges against him. *Compare Wolff*, 418 U.S. at 563-69 (holding when a state seeks to revoke good-time credits, prison disciplinary proceedings must meet minimal due process requirements by giving written notice of charges, allowing inmate to call witnesses, and providing inmate with evidence relied on and reasons for disciplinary action) *with Wilkinson*, 545

10

U.S. at 228-29 (holding where liberty interest merely affects conditions under which prisoner is housed, prisoner is not entitled to process established in *Wolff*). Therefore, the Court **DISMISSES** Plaintiff's allegations that he was denied proper disciplinary procedures prior to his placement in segregation.[1]

### 9. Property Claim (Defendant Moore)

Plaintiff also complains that Defendant CO Moore entered his cell and threw "all [his] property in the trash" [Doc. 32 p. 6]. The United States Supreme Court has held that the Due Process Clause of the Fourteenth Amendment is not violated when a State employee randomly deprives an individual of property, provided that the State makes a meaningful post-deprivation remedy available. *Parratt v. Taylor*, 451 U.S. 527, 543 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (extending *Parratt*'s holding to intentional deprivations of property). Thus, to state a Section 1983 claim premised on a procedural due process violation, Plaintiff "was required to plead . . . that there is no adequate state-law remedy for this deprivation." *Hill v. City of Jackson, Michigan*, No. 17-1386, 2018 WL 5255116, at *3 (6th Cir. Oct. 22, 2018). Plaintiff has not pled that Tennessee's post-deprivation procedures are inadequate for redressing the alleged wrong as is required to sustain his Section 1983 claim. *See Vicory v. Walton*, 721 F.2d 1062, 1063 (6th Cir. 1983). Moreover, the Court notes that Tennessee law provides for the recovery of personal property. *See McQuiston v. Ward*, No. M2001-201, 2001 WL 839037, at * 1 (Tenn. Ct. App. July 25, 2001) (citing Tenn. Code. Ann. § 29-30-101 and § 29-30-201). Plaintiff has not shown that these State

---

[1] While Plaintiff complains that he was denied various privileges while on lockdown, the record before the Court belies his allegations. Plaintiff submitted filings to the Court during periods of time he was allegedly on lockdown without access to any privileges; during this time, he also allegedly saw a free-world specialist for medical care and obtained a written disciplinary report [*See, e.g.*, Docs. 11, 12, 14, 17, 18, and 25].

11

remedies are inadequate, and therefore, he has not stated a claim that would entitle him to relief under Section 1983 for the deprivation of his personal property. Accordingly, the Court **DISMISSES** this claim.

> **10. Excessive Force and Denial of Medical Care Claims (Defendants Booth, Moore, Ellis, Draper, Joy, and Crider)**

Liberally construing Plaintiff's Amended Complaint and accepting all well-pled facts as true, Plaintiff has stated plausible constitutional claims that (1) Defendants COs Booth, Moore, and Ellis subjected him to excessive force, and that (2) Defendants Nurses Draper, Joy, and Crider denied him constitutionally adequate medical care. The Court therefore allows these discrete claims to **PROCEED**.

**II. CONCLUSION**

For the reasons set forth above, Plaintiff's claims for (1) excessive force against Defendants Booth, Moore, and Ellis, and (2) denial of adequate medical care against Defendants Draper, Joy, and Crider will **PROCEED**.

The Clerk is **DIRECTED** to send Plaintiff service packets (a blank summons and USM 285 form) for Defendants Booth, Moore, Ellis, Draper, Joy, and Crider. Plaintiff is **ORDERED** to complete the service packets and return them to the Clerk's Office within twenty (20) days of receipt of this Order. At that time, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service. Fed. R. Civ. P. 4. Plaintiff is forewarned that if he fails to timely return the completed service packets, this action will be dismissed.

Defendants shall answer or otherwise respond to the operative complaint within twenty-one (21) days from the date of service. If any Defendant fails to timely respond, it may result in entry of judgment by default against that Defendant.

The Court **DISMISSES** all other claims and Defendants.

Finally, Plaintiff is **ORDERED** to immediately inform the Court and the remaining Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

**SO ORDERED**.

**E N T E R :**

                                                  s/ Katherine A. Crytzer
                                                  KATHERINE A. CRYTZER
                                                  United States District Judge